Filed 5/17/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MICHAEL BENAROYA, | B281761 |
| Petitioner and Appellant, | (Los Angeles County |
| v. | Super. Ct. Nos. BS164066, BS164649) |
| BRUCE WILLIS et al., | |
| Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rafael Ongkeko, Judge.  Reversed and remanded.

Loeb & Loeb, David Grossman and Robert J. Catalano for Petitioner and Appellant.

Lavely & Singer, Martin D. Singer, Allison S. Hart; Horvitz & Levy, Jeremy B. Rosen and John F. Querio for Respondents.

Benaroya Pictures (Benaroya) contracted with Westside Corporation (Westside) to pay the well-known actor Bruce Willis, the

president of Westside, to perform in a movie to be produced by Benaroya. After a dispute arose regarding Willis' payment, Willis and Westside (collectively respondents) commenced arbitration proceedings against Benaroya, pursuant to the arbitration clause in the agreement. While in arbitration, respondents moved to amend their arbitration demand to name appellant Michael Benaroya individually, even though he was not a party to the agreement, on the ground that he was the alter ego of Benaroya. The arbitrator granted the request, found appellant to be Benaroya's alter ego, and awarded damages to respondents for which both Benaroya and appellant, as Benaroya's alter ego, were liable. The trial court denied appellant and Benaroya's petition to vacate the award as to appellant, and granted respondents' petition to confirm the award. In this appeal from the confirmation of the award, appellant contends the trial court erred because he was a nonsignatory to the arbitration agreement, and only the court, not the arbitrator, had authority to determine whether he was compelled to arbitrate as the alter ego of Benaroya. We agree and therefore reverse the judgment. We remand the case to the trial court with directions to: (1) set aside its rulings denying appellant and Benaroya's petition to vacate the award and granting respondent's petition to confirm; and (2) enter new orders granting appellant and Benaroya's petition to vacate the award as to appellant, and granting respondents' petition to confirm the award only as to Benaroya.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 2014, Benaroya and Westside entered an escrow agreement for Creative Artists Agency to hold $8 million in trust for the services of Bruce Willis in a movie. Willis signed the agreement as president of Westside, designated in the contract as "Lender," and appellant signed on behalf of Benaroya Pictures, identified as "Producer." The agreement contained an arbitration clause, providing in relevant part: "If there is any dispute between Producer and Lender with respect to the disposition of funds deposited in the Escrow Account, the parties agree that such dispute shall be resolved exclusively through arbitration . . . pursuant to the rules and regulations of JAMS [Judicial Arbitration and Mediation Service] before a single arbitrator. If the parties are unable to agree upon an arbitrator, the arbitrator will be selected according to the Commercial Arbitration Rules of JAMS."[1]

In May 2015, respondents filed a demand for arbitration pursuant to the arbitration clause, alleging that Benaroya breached the escrow agreement by failing to pay Willis. Benaroya filed an answer and counterclaim, alleging money had and received, conversion, and breach of the contract by Willis.

On September 10, 2015, respondents moved before the arbitrator to amend the arbitration demand to name appellant as an additional party. The motion for leave to amend asserted that appellant is "the

_____

[1]    We describe the terms of the arbitration agreement in more detail below in our Discussion.

3

founder, principal, managing member, sole officer and Chief Executive Officer of Benaroya Pictures."

Benaroya opposed the motion, arguing that appellant was not a party to the escrow agreement and arbitration clause, and that the question whether a nonsignatory can be compelled to arbitrate is a question for the trial court alone.

After the arbitrator issued a tentative ruling granting respondents' motion for leave to amend, Benaroya and appellant informed the arbitrator and respondents "that they would submit" on the tentative ruling. The arbitrator then granted the motion to amend and named appellant as a party to the arbitration, relying on Rule 11(b) of the JAMS Comprehensive Arbitration Rules and Procedures, which "provides that jurisdictional disputes, including regarding who are proper parties to the Arbitration, 'shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction . . . issues as a preliminary matter.'" In support of the ruling, the arbitrator cited *Comerica Bank v. Howsam* (2012) 208 Cal.App.4th 790 (*Comerica*) for the proposition that "[a]n arbitrator may decide the question whether an alter ego relationship exists when the designated arbitration rules give the arbitrator the power to determine the question."

Following the ruling, Benaroya's arbitration brief continued to dispute the arbitrator's exercise of jurisdiction over appellant. For their part, respondents' brief asked the arbitrator to draw an adverse inference against appellant on the alter ego issue, because Benaroya had not produced financial documents in response to a subpoena.

4

Benaroya and appellant opposed the request, reiterating their position that the arbitrator lacked authority to bind appellant as Benaroya's alter ego.[2] Appellant and Benaroya challenged the alter ego theory again in their post-hearing closing brief.

The matter proceeded through arbitration. Ultimately, in the final arbitration award, the arbitrator determined appellant to be Benaroya's alter ego. The arbitrator found "considerable unity of interest between [Benaroya] and [appellant]," reasoning that appellant "solely controls" and "adds funds" to Benaroya. He further reasoned that appellant "personally made the misrepresentations to Willis' agents on behalf of [Benaroya]." The arbitrator further cited appellant's admission of "sloppy record-keeping," his failure to "produce many documents," and his lack of credibility. The arbitrator concluded that, although it was "a close call, . . . an inequity would result if [appellant] was not found to be [Benaroya's] alter ego." On the merits of the contract dispute, the arbitrator found in favor of respondents and awarded them $5,024,778.61 in damages, plus prejudgment interest,

---

[2] They also contended that the subpoenas were served only three days before the commencement of the arbitration hearing, and were extremely overbroad and irrelevant to the alter ego issue. The subpoenas sought, among other documents, "All statements for any account at any financial institution of any kind in which Benaroya Pictures has held any interest from January 1, 2012 to the present" and "All documents evidencing or memorializing all monies paid by Benaroya Pictures for the production of the motion picture entitled *Idol's Eye* from January 1, 2013 to November 30, 2014."

attorney fees, and costs, for which Benaroya and appellant (as Benaroya's alter ego) were liable.

Appellant and Benaroya moved to vacate the arbitration award or to correct it to remove appellant as a party. They argued that the arbitrator exceeded his authority by making the alter ego finding and exercising jurisdiction over appellant, a nonsignatory to the arbitration agreement. They further argued that the arbitrator's determination usurped the authority of the court and was legally unsupportable. Respondents filed a petition to confirm the award. The trial court granted respondents' petition, denied appellant and Benaroya's petition, and entered judgment in favor of respondents. Appellant timely appealed.

## DISCUSSION

Appellant contends the trial court erred in confirming the arbitration award because the decision whether a nonsignatory to an arbitration agreement can be compelled to arbitrate is a matter solely within the authority of the trial court, not the arbitrator. We agree: while the relevant JAMS rule here permits an arbitrator to determine whom among signatories to an arbitration agreement are proper parties for the dispute to be arbitrated, the rule cannot (and does not) permit the arbitrator to determine whether a nonsignatory to the arbitration agreement can be compelled to arbitrate. The authority to decide that question resides, by law, solely with the trial court.

The escrow agreement stated that it was "between Benaroya Pictures ('Producer') and Westside Corp . . . ('Lender') [for the services

6

of] Bruce Willis ('Artist')." As we have noted, the arbitration provision in the escrow agreement provided in pertinent part: "If there is any dispute between Producer and Lender with respect to the disposition of funds deposited in the Escrow Account, the parties agree that such dispute shall be resolved exclusively through arbitration in Los Angeles, California pursuant to the rules and regulations of JAMS before a single arbitrator. If the parties are unable to agree upon an arbitrator, the arbitrator will be selected according to the Commercial Arbitration Rules of JAMS." In the provision on governing law, the agreement stated, in part that "all disputes which may arise between the parties hereto under or with respect to this Escrow Agreement . . . will be determined pursuant to California law and shall be resolved either by arbitration in accordance with the rules of JAMS or by a determination by a SAG-AFTRA arbitration tribunal, based upon the election of fora permitted by this Escrow Agreement. All such procedures shall be held in Los Angeles, California and Producer and Lender hereby submit to personal jurisdiction in the State of California for such purposes."

The trial court reasoned that the arbitrator's powers derive from the agreement to arbitrate and therefore examined the arbitration provision in the escrow agreement to determine if the arbitrator exceeded his powers. Because the escrow agreement stated that the rules of JAMS applied, the court looked to those rules, which state that the arbitrator shall determine its own jurisdiction, and concluded that

7

the arbitrator correctly determined the alter ego issue and did not impermissibly expand the scope of the arbitration provision.[3]

"We review de novo the trial court's order confirming the arbitration award. [Citations.]" (*Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1435 (*Greenspan*).) "Whether an arbitration agreement is binding on a third party (e.g., a nonsignatory) is a question of law subject to de novo review. [Citation.]" (*Daniels v. Sunrise Senior Living, Inc.* (2013) 212 Cal.App.4th 674, 680 (*Daniels*); see also *Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1512 (*Suh*) ["Whether an arbitration agreement is operative against a nonsignatory is determined by the trial court and reviewed de novo."].)

Here, while it is true that the language of an arbitration agreement determines the scope of the arbitrator's powers granted by the signatories, the agreement cannot bind nonsignatories, absent a judicial determination that the nonsignatory falls within the limited

---

[3] The court cited JAMS Rule 11(b), which provided: "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." The court also relied on JAMS Rule 24(c): "In determining the merits of the dispute, the Arbitrator shall be guided by the rules of law agreed upon by the Parties. . . . The Arbitrator may grant any remedy or relief that is just and equitable and within the scope of the Parties' agreement, including, but not limited to, specific performance of a contract or any other equitable or legal remedy."

8

class of third-parties who can be compelled to arbitrate.  (See *Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 252 (*Sandquist*) ["To presume arbitrability without first establishing, independently, consent to arbitration is to place the proverbial cart before the horse."].)

'"Although California has a strong policy favoring arbitration [citations], our courts also recognize that the right to pursue claims in a judicial forum is a substantial right and one not lightly to be deemed waived.  [Citations.]  Because the parties to an arbitration clause surrender this substantial right, the general policy favoring arbitration cannot replace an agreement to arbitrate.  [Citations.]  Thus, the right to compel arbitration depends upon the contract between the parties, [citations], and a party can be compelled to submit a dispute to arbitration only where he has agreed in writing to do so.  [Citation.]' [Citation.]" (*Smith v. Microskills San Diego L.P.* (2007) 153 Cal.App.4th 892, 896 (*Smith*); *Matthau v. Superior Court* (2007) 151 Cal.App.4th 593, 598 (*Matthau*) ["Arbitration is a favored method of resolving disputes, but the policy favoring arbitration does not eliminate the need for an agreement to arbitrate and does not extend to persons who are not parties to an agreement to arbitrate."].)  Numerous cases confirm the general rule that "a party cannot be compelled to arbitrate a dispute that he or she has not agreed to resolve by arbitration.  [Citations.]" (*Daniels*, *supra*, 212 Cal.App.4th at p. 680; see, e.g., *Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 347 ["'The right to arbitration depends upon contract; a petition to compel arbitration is simply a suit in equity seeking

9

specific performance of that contract. [Citations.] There is no public policy favoring arbitration of disputes which the parties have not agreed to arbitrate.'"]; *Adajar v. RWR Homes, Inc.* (2008) 160 Cal.App.4th 563, 569 [arbitration cannot be compelled unless there is an agreement to arbitrate]; *Freeman v. State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 481 ["There is indeed a strong policy in favor of enforcing agreements to arbitrate, but there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate and which no statute has made arbitrable."]; *Goldman v. SunBridge Healthcare, LLC* (2013) 220 Cal.App.4th 1160, 1169 (*Goldman*) ["""there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate"""].)

"There are circumstances in which nonsignatories to an agreement containing an arbitration clause can be compelled to arbitrate under that agreement. As one authority has stated, there are six theories by which a nonsignatory may be bound to arbitrate: '(a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing or alter ego; (e) estoppel; and (f) third-party beneficiary' [citations]." (*Suh, supra,* 181 Cal.App.4th at p. 1513.)

Although a nonsignatory can be compelled to arbitrate, California caselaw is clear that "an arbitrator has no power to determine the rights and obligations of one who is not a party to the arbitration agreement. [Citation.] The question of whether a nonsignatory is a party to an arbitration agreement is one for the trial court in the first instance." (*American Builder's Assn. v. Au-Yang* (1990) 226 Cal.App.3d

10

170, 179 (*American Builder's*); see also *Matthau, supra,* 151 Cal.App.4th at p. 604 ["'Whether or not an arbitration agreement is operative against a person who has not signed it involves a question of "substantive arbitrability" which is to be determined by the court.'"]; *City of Hope v. Bryan Cave, L.L.P.* (2002) 102 Cal.App.4th 1356, 1369 ["'The determination of standing to arbitrate as a party to the contractual arbitration agreement is a question of law for the trial court in the first instance.'"].)

This rule is grounded on policy concerns explained by the court in *American Builder's*: "If an arbitrator, rather than a trial court, were to determine whether an arbitration provision were operative against a nonsignatory, a stranger to the agreement might be subjected to and be bound by an arbitration to which such stranger had not consented and would be without effective review. While a court will vacate an arbitration award if the arbitrators exceeded their powers, courts may not examine the *sufficiency* of the evidence supporting the award. [Citations.] [Fn. omitted.] Thus, if [the plaintiff] were to bring a motion to vacate the award asserting the arbitrator had exceeded his powers in ordering joinder due to insufficient evidence to support a finding that [the corporation] was the [defendants'] principal, the trial court, constrained by the limited grounds set forth in [Code of Civil Procedure section] 1286.2, would decline to review the arbitrator's factual finding." (*American Builder's, supra,* 226 Cal.App.3d at pp. 179-180.)

In *American Builder's*, a builder and a homeowner entered into a written construction contract that contained an arbitration clause. When a dispute arose about the contract, the plaintiff builder sued the

11

owners of the property.  The defendant owners filed a demand for arbitration.  The arbitrator found that, although the defendants were the signatories to the contract, they had signed the contract as agents for a corporation.  The arbitrator therefore ordered the defendants to join the nonsignatory corporation in the proceedings.  The plaintiff moved to stay the proceedings to obtain judicial review of the order.  The arbitrator continued the hearing, and the plaintiff filed a complaint seeking to enjoin the defendants from including the corporation in the arbitration proceedings.

The trial court denied the injunction on the grounds that the arbitrator had jurisdiction to determine whether the defendants signed as agent for the corporation, and that the "'all claims'" language in the arbitration clause was sufficient to bind the plaintiff to arbitration.  (*American Builder's*, *supra*, 226 Cal.App.3d at p. 175.)  The appellate court reversed, holding that "[t]he question of whether a nonsignatory is a party to an arbitration agreement is one for the trial court in the first instance."  (*Id.* at p. 179.)  The court acknowledged that "an arbitrator is authorized to determine all questions necessary to resolve the controversy submitted for decision.  [Citation.]  However, 'judicial enthusiasm for alternative methods of dispute resolution "must not in all contexts override the rules governing the interpretation of contracts[,]" as the policy favoring arbitration cannot displace the necessity for a voluntary agreement to arbitrate.  [Citation.]' [Citation.]"  (*Ibid.*)

Similarly, in *Retail Clerks Union v. L. Bloom Sons Co.* (1959) 173 Cal.App.2d 701, the appellant petitioned to compel arbitration with a

corporate entity that was separate from the corporation that was a party to the contract.  The trial court denied the petition, and the appellate court affirmed the denial.  The appellate court explained that the non-party "did not consent to have th[e] issue decided by an arbitrator rather than by a court of competent jurisdiction."  (*Id.* at p. 703.)  The court reasoned that appellant was "urging the patently absurd proposition that two parties can by contract effectively stipulate for the mode of determination of the rights of a third party who has not only not assented to such a mode of determination but who also is not even accorded an opportunity to participate in such determination."  (*Ibid.*)  Like respondents here, the appellant argued that the non-party to the contract was merely the alter ego of the party.  The court stated, "[a]ppellant begs the question.  It must first be determined whether [the non-party] is in fact but the alter ego of respondent. . . .  The proper forum for that determination is, of course, a court of law."  (*Ibid.*)

In *First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938 (*First Options*), the United States Supreme Court set forth the same policy concerns as those expressed by *American Builder's* in explaining that the question regarding who has the power to decide whether a party has agreed to arbitrate is crucial because of the deference accorded an arbitrator's decision.  The court stated, "a party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute . . . .  But, where the party has agreed to arbitrate, he or she, in effect, has relinquished much of that right's practical value.  The party still can ask a court to review the arbitrator's decision, but the court will set that decision aside only in very unusual

13

circumstances. [Citations.] Hence, who–court or arbitrator–has the primary authority to decide whether a party has agreed to arbitrate can make a critical difference to a party resisting arbitration." (*Id.* at p. 942.)

The trial court here relied on *Greenspan, supra,* 185 Cal.App.4th 1413, to conclude that the arbitrator had power under the JAMS rules to compel appellant, a nonsignatory to the escrow agreement, to arbitrate the dispute. But *Greenspan* is inapposite: it is a case in which parties to an arbitration agreement were ordered to arbitrate by the trial court, and the question presented was whether the JAMS rules they agreed would apply gave the arbitrator the authority to determine what specific issues were arbitrable in the parties' dispute. Nothing in *Greenspan* suggests that an arbitrator can somehow reach out to compel a non-party to the arbitration agreement to arbitrate a dispute under a contract to which he was not a party.

Distilling *Greenspan*'s complicated procedural background to its essence, the essential facts were as follows. After the plaintiff in *Greenspan* filed a civil action alleging breach of contract, the defendants filed a petition to compel arbitration in the trial court. (*Greenspan, supra,* 185 Cal.App.4th at p. 1425.) The plaintiff opposed the petition, contending that it was not a party to any agreement containing an arbitration clause, and that the arbitration agreement cited in the petition did not encompass the causes of action in the plaintiff's complaint. The trial court disagreed, found that the parties had entered a valid arbitration agreement, ordered the plaintiff to initiate mediation

14

and, if that was unsuccessful, commence arbitration proceedings. (*Ibid.*)  The mediation failed, and the parties then agreed to resolve their disputes through an arbitration proceeding that would be governed by JAMS rules.  (*Id.* at pp. 1426-1427.)  In rendering an award in the plaintiff's favor, the JAMS arbitrator concluded that the defendants were jointly and severally liable.

Appealing from the trial court's denial of their petition to vacate the award, the defendants argued that the arbitrator exceeded his authority, because the plaintiff did not plead the theory of joint and several liability, and therefore, under relevant JAMS rules, the theory of joint and several liability was not an issue the arbitrator could decide.  (*Greenspan, supra*, 185 Cal.App.4th at pp. 1435-1436.)

In that context, the *Greenspan* court framed the initial issue presented as "*who* in this case determines *what* issues were arbitrable– the arbitrator or a judge.  In other words, does the arbitrator or the court decide the question of arbitrability?"  (185 Cal.App.4th at p. 1439.) Relying on *First Options, Greenspan* observed that "[s]imply put, '[t]he question whether the parties have submitted a particular dispute to arbitration, i.e., the "question of arbitrability," is "an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise."' [Citations.]" (*Id.* at p. 1440.)  The parties in *Greenspan* "did not clearly and unmistakably agree in the Arbitration Agreement that the arbitrator would decide arbitrability," but they did agree to arbitrate their dispute under JAMS rules, and those rules gave the arbitrator the authority to decide what issues were arbitrable.  (*Ibid.*)

15

The court concluded that, "'when . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.' [Citations.]" (*Id.* at p. 1442.)

The holding of *Greenspan*–that by incorporating JAMS rules in their agreement the parties *to that agreement* gave the arbitrator the power to decide what issues in their dispute were arbitrable–does not stand for the proposition that by incorporating JAMS rules, parties to an arbitration agreement can give the arbitrator the power to compel *a nonsignatory* to the agreement to become a party to the arbitration.[4]

The trial court also relied on *Keller Construction Co. v. Kashani* (1990) 220 Cal.App.3d 222 *(Keller)*, but *Keller,* too, is inapposite. Based

_____

[4] We note that the cases relied upon by *Greenspan* similarly concerned whether a claim was within the scope of the arbitration agreement–not the initial determination whether a nonsignatory can be compelled to arbitrate. (See *Greenspan, supra,* 185 Cal.App.4th at p. 1441, discussing *Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1123 [where there was no dispute that parties were subject to the arbitration clause, the plaintiffs contended "two of their grievances fall outside the clause's scope"]; *Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 553-556 [where parties had arbitration agreement, holding that they clearly agreed upon arbitration of all contested claims of loss]; *Monex Deposit Co. v. Gilliam* (C.D. Cal. 2009) 616 F.Supp.2d 1023, 1025 [where there was no dispute parties were subject to the arbitration agreement, compelling arbitration of all counterclaims, noting that the arbitration agreement "incorporates JAMS Rules providing that the arbitrator decides scope and validity disputes with respect to particular claims"].)

on provisions of the Corporations Code, *Keller* held that "a sole general partner of a limited partnership under the facts of this case is subject to an arbitration agreement between the partnership and a third party." (*Id.* p. 229.) However, as noted by *American Builder's*, "*Keller* did not address which forum should determine the existence of an agency relationship in the first instance in the event there is a factual dispute as to that issue." (*American Builder's*, *supra*, 226 Cal.App.3d at p. 179, fn. 4.) California law makes the answer to that question clear: a "logical condition precedent" that a court must decide before a case can be sent to arbitration "is whether, in fact, the parties agreed to arbitrate at all; it makes no sense to compel parties to go before an arbitrator without first determining they agreed to do so." (*Sandquist, supra*, 1 Cal.5th at p. 254.)

None of the decisions cited by respondent is to the contrary. For example, respondents rely on *Suh*, 181 Cal.App.4th 1504, which (as we have noted) discussed the circumstances in which a nonsignatory can be compelled to arbitrate. *Suh*, however, stated that "[w]hether an arbitration agreement is operative against a nonsignatory is determined by the *trial court* and reviewed de novo. [Citation.]" (*Id.* at p. 1512, italics added; see also *Daniels, supra,* 212 Cal.App.4th at p. 676 [trial court and appellate court determined whether nonsignatory should be compelled to arbitrate]; *Goldman, supra*, 220 Cal.App.4th at p. 1169 [determination whether nonparty who signed arbitration agreement on husband's behalf should be compelled to arbitrate made by court]; *Rowe v. Exline* (2007) 153 Cal.App.4th 1276, 1284 [decision

17

that "a nonsignatory sued as the alter ego of a signatory can enforce an arbitration provision" made by the court]; *Smith, supra,* 153 Cal.App.4th at p. 901 [affirming trial court order denying nonsignatory's motion to compel arbitration]; *Matthau, supra,* 151 Cal.App.4th at p. 598 [court was the forum for determining whether a nonsignatory should be bound by an arbitration agreement]; *Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262, 265, 268 [trial court and appellate court determined whether defendant, a nonsignatory to the agreement, could compel plaintiff to arbitrate his causes of action]; *Harris v. Superior Court* (1986) 188 Cal.App.3d 475, 477–478 [decision to compel nonsignatory to arbitration made by court]; cf. *Mormile v. Sinclair* (1994) 21 Cal.App.4th 1508, 1511 [holding that "a patient can bind his or her nonsignatory spouse to arbitrate a loss of consortium claim against a health care provider" and therefore reversing trial court order denying petition to compel arbitration].)[5]

Finally, although respondents concede that the alter ego issue is normally for the courts to decide, they argue that, here, "the parties

---

[5] Respondents also rely on *Comerica,* but the question there was not whether a nonsignatory to the arbitration agreement could be compelled to arbitrate as an alter ego. Rather, in *Comerica,* the defendants who challenged the arbitrator's alter ego finding were signatories to the agreement and, in fact, they "all agreed to arbitrate the claims contained in the first amended complaint, with its alter ego allegations, under . . . international arbitration rules." (*Comerica, supra,* 208 Cal.App.4th at p. 834.) In concluding that "[t]he arbitrator did not exceed his powers by deciding the alter ego issue," the court pointed out that the defendants not only agreed to arbitrate, but "actively sought to arbitrate." (*Id.* at pp. 831, 834.)

have clearly and unmistakably delegated such arbitrability issues to the arbitrator." They are mistaken. Appellant, a nonsignatory to the agreement, did not agree to delegate *any* issues to the arbitrator. Moreover, while in some circumstances a party's conduct may evidence an implied agreement to arbitrate (*Douglass v. Serenivision, Inc.* (2018) 20 Cal.App.5th 376, 387-388) "consent to arbitration (or to the arbitrator's power to decide arbitrability) will not be inferred solely from a party's conduct of appearing in the arbitral forum to object to the arbitrator's exercise of jurisdiction, at least if the party makes that objection 'prior to participat[ing]' in the arbitration. [Citations.]" (*Ibid.*) Here, appellant and Benaroya repeatedly disputed the arbitrator's power to determine the alter ego issue, and never voluntarily submitted to the arbitrator's jurisdiction.

"[M]erely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, i.e., a willingness to be effectively bound by the arbitrator's decision on that point. To the contrary, insofar as [appellant and Benaroya] were forcefully objecting to the arbitrator[] deciding their dispute . . . , one naturally would think that they did not want the arbitrator[] to have binding authority over them." (*First Options, supra*, 514 U.S. at p. 946; see *Ikerd v. Warren T. Merrill & Sons* (1992) 9 Cal.App.4th 1833, 1843 [corporate president's participation in arbitration proceeding on behalf of corporation did not constitute a general appearance for jurisdictional purposes nor waive his right to object to arbitrator's imposition of jurisdiction over him because "he necessarily [participated] as the person most knowledgeable about the relevant facts."].)

*Harmless Error*

Respondents contend that, even if the alter ego issue should have been decided by the court rather than the arbitrator, the confirmation of the arbitration award should be affirmed. The reason: any error was harmless, because there was "overwhelming evidence" in the arbitration of appellant's alter ego status. We note that the arbitrator did not find "overwhelming evidence." Instead, the arbitrator described the issue as a "close call."

Regardless, the error in permitting the arbitrator to decide whether appellant could be compelled to arbitrate as the alter ego of Benaroya is not subject to harmless error. "[I]ts effects are "'unmeasurable'" and "'def[y] analysis by 'harmless-error' standards.'" [Citations.]" (*Sandquist, supra*, 1 Cal.5th at p. 261.) The wrong decision-maker decided the issue; the arbitrator exceeded his authority by purporting to compel appellant to arbitrate and making him liable for the award as Benaroya's alter ego. Therefore, the arbitration award must be set aside insofar as it binds appellant. (Code Civ. Proc., § 1286.2, subd. (a)(4) [ground for vacating arbitration award established where "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted"].) There is no basis for finding the court's failure to do so was mere harmless error.

## DISPOSITION

The judgment is reversed. The case is remanded to the trial court with directions to: (1) set aside its rulings denying appellant and Benaroya's petition to vacate the award and granting respondent's petition to confirm the award; and (2) enter new and different orders granting appellant and Benaroya's petition to vacate the award as to appellant, and granting respondents' petition to confirm the award only as to Benaroya. Appellant is entitled to costs on appeal.

**CERTIFIED FOR PUBLICATION**


WILLHITE, J.


We concur:



EPSTEIN, P. J.



COLLINS, J.


21