Filed 6/29/23  Zaghi v. The Kroger Co. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AYDA ZAGHI,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>THE KROGER CO. et al.,<br><br>    Defendants and Appellants. | B316460<br><br>Los Angeles County<br>Super. Ct. No.<br>20STCV00193 |

APPEAL from an order of the Superior Court of Los Angeles County, Maren E. Nelson, Judge. Affirmed.

Davis Wright Tremaine, Jacob M. Harper, James H. Moon, and Peter K. Bae for Defendants and Appellants.

Yeroushalmi & Yeroushalmi and Reuben Yeroushalmi for Plaintiff and Respondent.

## INTRODUCTION

Plaintiff Ayda Zaghi, individually and on behalf of all others similarly situated, sued Ralphs Grocery Company and The Kroger Co. (collectively, Ralphs) for falsely advertising that a loaf of bread she purchased from Ralphs through Instacart's virtual storefront was certified kosher. Ralphs moved to compel arbitration of Zaghi's claims, arguing it is a third-party beneficiary of an arbitration provision included in Instacart's terms of service. The court denied Ralphs's motion, concluding Instacart's arbitration provision applies only to disputes between Instacart and its customers. In any event, the court concluded, Zaghi's claims were not the type of disputes covered by Instacart's arbitration provision.

On appeal, Ralphs contends the court erred in denying its motion to compel arbitration because (1) Instacart's arbitration provision requires an arbitrator, and not the court, to resolve issues of arbitrability, such as whether a nonsignatory to Instacart's terms of service can enforce the arbitration provision; and (2) Ralphs is a third-party beneficiary of Instacart's terms of service, including the arbitration provision. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Instacart is an online platform that provides an online storefront for customers to purchase groceries and other items from third-party retailers and arrange for those items to be delivered by independent contractors. Ralphs is a grocery store that operates as a third-party retailer on Instacart's online storefront.

In February 2016, Zaghi created an Instacart account. In doing so, she accepted Instacart's Terms of Service, which

include, among other things, an arbitration provision. By accepting the Terms of Service, an Instacart customer agrees to arbitrate any "dispute with Instacart arising out of [the customer's] use of [Instacart's] services" if the customer and Instacart can't first "work out any such dispute amicably." The arbitration provision provides that any arbitration between Instacart and its customers "shall be administered by the [Judicial Arbitration and Mediation Service (JAMS),] under its Comprehensive Rules in effect at the time the arbitration demand is made." If there is any conflict between the arbitration provision and JAMS's rules and procedures, the arbitration provision "shall apply." The arbitration provision also includes a class action waiver. A customer may opt out of mandatory arbitration by timely providing Instacart with notice of the customer's intent to opt out of the arbitration provision.

Instacart's Terms of Service also include a choice of law provision stating that California law governs the application and interpretation of the agreement for customers residing in the United States. Additionally, the Terms of Service include release of claims, indemnification, and limitation of liability provisions. The release of claims and limitation of liability provisions state that they apply to, among other entities, Instacart's retail partners. Instacart's arbitration provision does not include similar language, however.

In November 2018, Instacart added the following disclaimer to the first page of its Terms of Service:

> SECTION 11 ("DISPUTES & ARBITRATION") OF THESE TERMS PROVIDE THAT ANY CLAIMS THAT YOU AND INSTACART HAVE AGAINST EACH OTHER, INCLUDING, WITHOUT

LIMITATION, ANY CLAIMS THAT AROSE OR WERE ASSERTED BEFORE THE EFFECTIVE DATE OF THESE TERMS, WILL, WITH LIMITED EXCEPTIONS, BE SUBMITTED TO BINDING AND FINAL ARBITRATION. UNLESS YOU OPT OUT OF THE ARBITRATION AGREEMENT YOU WILL ONLY BE PERMITTED TO PURSUSE CLAIMS AND SEEK RELIEF AGAINST INSTACART ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION OR PROCEEDING. YOU ALSO WAIVE YOUR RIGHT TO SEEK RELIEF IN A COURT OF LAW AND TO HAVE A JURY TRIAL ON YOUR CLAIMS. PLEASE SEE SECTION 11 FOR MORE INFORMATION REGARDING THIS ARBITRATION AGREEMENT, THE POSSIBLE EFFECTS OF THIS ARBITRATION AGREEMENT, AND HOW TO OPT OUT OF THE ARBITRATION AGREEMENT.[1]

In 2019, Zaghi used her Instacart account to purchase a loaf of rye bread from Ralphs.[2] Zaghi purchased the bread because it was advertised to be certified kosher. Specifically, Zaghi saw an "OK Kosher" certification sticker on the bread's

---

[1] Between, November 2015 and June 2019, Instacart updated its Terms of Service several times without making any changes to the terms of its arbitration provision that are material to Zaghi's lawsuit.

[2] According to Instacart's senior litigation paralegal, a customer must agree to Instacart's Terms of Service every time the customer places an order through the company's platform.

label posted on Ralphs's Instacart page. Zaghi also saw the certification sticker on the bread's packaging and on Ralphs's website. Zaghi later learned that the bread was not certified to be kosher by OK Kosher, the trademark licensee of the certification sticker included on the bread's label.

In January 2020, Zaghi sued Ralphs, claiming the grocery store falsely advertised that the loaf of bread she purchased was certified kosher. According to Zaghi, she relies "on certifications by specific certifying organizations, provided on packaging via a statement or symbol, that food products are kosher when so indicated," and she would not have purchased the loaf of bread had Ralphs not advertised the product to be certified kosher. Zaghi's operative third amended complaint includes class allegations and asserts three causes of action for false advertising under Business and Professions Code sections 17200 and 17500 and Civil Code section 1750.

Ralphs moved to compel arbitration of Zaghi's claims. Ralphs claimed it was a third-party beneficiary of the arbitration provision included in Instacart's Terms of Service. When Zaghi accepted those terms, Ralphs argued, she agreed to arbitrate any disputes with Ralphs arising out of her use of Instacart to purchase goods from the grocery store. To the extent Zaghi challenged Ralphs's standing to enforce the arbitration provision, Ralphs argued the court was required to submit that question to arbitration because JAMS's rules and procedures require issues of arbitrability to be decided by the arbitrator.

The court denied Ralphs's motion. The court found Ralphs was not a third-party beneficiary of Instacart's arbitration provision. The court reasoned that, unlike other provisions of Instacart's Terms of Service, the arbitration provision does not

state that it applies to any third parties, such as Instacart's retail partners. Rather, the agreement states only that an Instacart customer is required to arbitrate disputes between herself and Instacart over her use of Instacart's services. Since the parties knew how to draft provisions of the Terms of Service for the benefit of third parties, such as third-party retailers like Ralphs, the absence of such language in the arbitration provision shows the parties did not intend for that agreement to benefit third parties.

The court also rejected Ralphs's arbitrability argument. Under the language of Instacart's arbitration provision, Zaghi agreed only to arbitrate disputes, including disputes over issues of arbitrability, between herself and Instacart. Since Instacart's arbitration provision does not clearly show Zaghi agreed to arbitrate the issue of arbitrability with nonsignatories, the " 'court had the authority to decide whether the instant dispute is arbitrable.' " In any event, the court concluded, Zaghi's claims against Ralphs did not fall within the scope of the arbitration provision because they do not arise out of any conduct by Instacart. Instead, the court reasoned, Zaghi's claims are incidental to her use of Instacart and arise directly out of Ralphs's alleged false advertising concerning one of its products, conduct that Ralphs engaged in not just on the Instacart page, but also on its product packaging and on its website.

Ralphs appeals.

## DISCUSSION

Ralphs argues the court erred in denying its motion to compel arbitration because an arbitrator, and not the court, should have decided the issue of arbitrability—i.e., whether a nonsignatory like Ralphs can enforce the arbitration provision in

6

Instacart's Terms of Service. In any event, Ralphs argues, it is entitled to enforce the arbitration provision as a third-party beneficiary of those Terms of Service. As we explain, both of Ralphs's arguments lack merit.

## 1. Applicable Law and Standard of Review

The Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) and the California Arbitration Act (CAA) (Code Civ. Proc., § 1280 et seq.) favor enforcement of valid arbitration agreements.[3] (*Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 83; *Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 31.) This policy does not extend, however, to those who are not parties to an arbitration agreement. (*Howsam*, at p. 83; *Benasra v. Marciano* (2001) 92 Cal.App.4th 987, 990.) Nor can a party "be compelled to arbitrate a dispute that [she] has not agreed to resolve by arbitration." (*Benasra*, at p. 990.)

A court must order a dispute to arbitration "when the party seeking to compel arbitration proves the existence of a valid arbitration agreement covering the dispute." (*Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1404–1405.) Where, as here, the underlying facts are undisputed, we independently review an order denying a motion to compel arbitration. (*Banc of California, National Assn. v. Superior Court* (2021) 69 Cal.App.5th 357, 367.)

---

[3] As Ralphs acknowledges, we need not determine whether the CAA or the FAA governs Instacart's arbitration provision because the statutory schemes are "interpreted the same under controlling precedent." (*Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231, 241.)

**2. The court had the authority to decide whether Ralphs could enforce the arbitration provision.**

As a threshold matter, Ralphs contends the court lacked the authority to decide whether the grocery store could enforce Instacart's arbitration provision because that provision incorporates JAMS's rules and procedures, which include a delegation clause granting exclusive authority to decide arbitrability issues to an arbitrator.[4] Since Zaghi accepted Instacart's Terms of Service and did not opt out of the arbitration provision, Ralphs argues she agreed to submit *any* issues of arbitrability to the arbitrator—including whether a nonsignatory to Instacart's Terms of Service can enforce Instacart's arbitration provision. We disagree.

Parties to an arbitration agreement may agree to delegate the authority to decide issues of arbitrability to an arbitrator. (*Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1439–1440.) They may do so by incorporating into the arbitration agreement JAMS's rules and procedures for arbitration. (*Id.* at p. 1442.) Courts should not assume that parties to a lawsuit involving an arbitration provision agreed to arbitrate arbitrability, however, unless there is clear and unmistakable evidence that they did so. (*Id.* at p. 1440, citing *First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 945 (*First Options*).)

---

[4] Rule 11(b) of JAMS's Comprehensive Arbitration Rules & Procedures provides: "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."

8

As the United States Supreme Court has explained, issues of arbitrability generally are reserved for judicial determination. (*First Options*, *supra*, 514 U.S. at p. 945.) Thus, courts should not interpret silent or ambiguous contracts in favor of arbitrating issues of arbitrability. (*Ibid*.) "[G]iven the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." (*Ibid*.)

The FAA's presumption in favor of courts resolving arbitrability issues applies to questions concerning whether a nonsignatory can enforce an arbitration agreement against a signatory. (*Kramer v. Toyota* (9th Cir. 2013) 705 F.3d 1122, 1126–1128 (*Kramer*) [it is " 'well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide' "].) California courts have interpreted the CAA in a similar manner. (See *Matthau v. Superior Court* (2007) 151 Cal.App.4th 593, 598 ["the policy favoring arbitration does not eliminate the need for an agreement to arbitrate and does not extend to persons who are not parties to an agreement to arbitrate"].) Thus, before a clause delegating authority to resolve arbitrability issues to an arbitrator may be enforced against a signatory, a court must first determine whether the signatory agreed to arbitrate arbitrability with the person or entity seeking to enforce the arbitration agreement. (*Benaroya v. Willis* (2018) 23 Cal.App.5th 462, 469 (*Benaroya*) [" 'The question of whether a

nonsignatory is a party to an arbitration agreement is one for the trial court in the first instance.' "].)

Instacart's arbitration provision states that Zaghi and Instacart agree to resolve through binding arbitration any disputes concerning Zaghi's use of Instacart's online shopping platform or the interpretation of the company's Terms of Service. The first page of the Terms of Service that were in effect when Zaghi made the underlying purchase similarly states that "ANY CLAIMS THAT YOU [i.e., Zaghi] AND INSTACART HAVE AGAINST EACH OTHER … WILL, WITH LIMITED EXCEPTIONS, BE SUBMITTED TO BINDING AND FINAL ARBITRATION." Neither the arbitration provision nor any other section of the Terms of Service states that Zaghi agreed to arbitrate disputes with any person or entity other than Instacart. Thus, under a literal reading of Instacart's Terms of Service, Zaghi agreed only to arbitrate disputes between herself and Instacart, including disputes over the interpretation of the arbitration provision. (*Martinez v. BaronHR, Inc.* (2020) 51 Cal.App.5th 962, 967 (*Martinez*) [contract language controls if it is clear and explicit].)

*Kramer, supra*, 705 F.3d 1122, which involves facts similar to those at issue in this case, is instructive. (See *Brakke v. Economic Concepts, Inc.* (2013) 213 Cal.App.4th 761, 770 [although decisions of federal courts on similar issues are not binding, they may be persuasive].) There, a group of plaintiffs purchased cars from various dealerships. (*Kramer*, at p. 1124.) The plaintiffs sued the cars' manufacturer based on product defects and false advertising. (*Id.* at p.1125.) The manufacturer, who was not a party to the purchase agreements between the plaintiffs and the dealerships, moved to compel the plaintiffs to

arbitrate their claims based on arbitration provisions included in those purchase agreements. (*Id*. at pp. 1124–1125.) The arbitration provisions, which were all similarly worded, stated that they applied to disputes between the car buyers—i.e., the plaintiffs—and the dealerships. (*Id*. at p. 1124.) The arbitration provisions also included delegation clauses, stating that the provisions applied "to any claim or dispute about the interpretation and scope" of the provisions, as well as to "any claim or dispute about whether a claim or dispute should be determined by arbitration." (*Id*. at p.1125.)

The district court denied the manufacturer's motion to compel arbitration, and the Ninth Circuit affirmed the district court's order. (*Kramer, supra*, 705 F.3d at pp. 1125–1134.) The Ninth Circuit rejected the manufacturer's argument that the arbitration provisions' delegation clauses, which "expressly provide[d] that the arbitrator shall decide issues of interpretation, scope, and applicability of the arbitration provision," deprived the district court of the authority to decide whether the nonsignatory manufacturer could compel the plaintiffs to arbitration. (*Id*. at pp. 1126–1128.) The court explained that the arbitration provisions did "not contain clear and unmistakable evidence" that the plaintiffs and the manufacturer agreed to arbitrate arbitrability. (*Id*. at p. 1127.) Although the plaintiffs may have agreed to arbitrate arbitrability with the dealerships, the terms of the arbitration provisions "are expressly limited to Plaintiffs and the Dealerships." (*Ibid*.) For instance, the provisions stated that " '[e]ither you [i.e., a plaintiff] or we [i.e., a dealership] may choose to have any dispute between you and us decided by arbitration.' " (*Ibid*.) According to the court, the language of the arbitration provisions showed the

11

plaintiffs intended "to arbitrate arbitrability with the [d]ealerships and no one else." (*Ibid*.)

Like the agreements at issue in *Kramer*, Instacart's arbitration provision is expressly limited to disputes between Zaghi and Instacart. Instacart's arbitration provision does not state that it is enforceable by third parties or that it applies to disputes involving third parties. Nor do any other sections of Instacart's Terms of Service indicate that Zaghi agreed to arbitrate any disputes related to her use of Instacart's online shopping platform or the interpretation of the Terms of Service with third parties. Instacart's arbitration provision, therefore, does not contain "clear and unmistakable" language showing Zaghi agreed to arbitrate disputes with Ralphs over the arbitrability of her claims against the grocery store. (*Kramer*, *supra*, 705 F.3d at p. 1127.) Since the parties to this dispute—i.e., Zaghi and Ralphs—did not agree to arbitrate arbitrability, the delegation clause in Instacart's arbitration provision does not control. (*Id.* at p. 1128; see also *Benaroya*, *supra*, 23 Cal.App.5th at p. 469 [" 'The question of whether a nonsignatory is a party to an arbitration agreement is one for the trial court in the first instance.' "].)

Ralphs argues *Kramer* is distinguishable because "the Ninth Circuit conditioned its holding on 'the absence of clear and unmistakable evidence that [the plaintiffs] agreed to arbitrate arbitrability.' " Because Instacart's arbitration provision expressly incorporated JAMS's rules and procedures, which were not incorporated into the arbitration provisions in *Kramer*, Ralphs insists that Zaghi "clearly and unmistakably "inten[ded] to have the arbitrator decide gateway issues of arbitrability." This is a distinction without a difference. As we just discussed,

12

the arbitration provisions in *Kramer* included their own delegation clauses, delegating the authority to decide issues of arbitrability, including issues over the applicability of the provisions, to an arbitrator. (*Kramer*, *supra*, 705 F.3d at p. 1124.) But, just as in *Kramer*, the key issue here is not whether the underlying arbitration provision includes a clause delegating to an arbitrator the authority to decide issues of arbitrability, but rather whether the parties before the court agreed to be bound by an arbitration provision that includes a delegation clause. That is an issue for the court to decide. (See *Henry Schein, Inc. v. Archer & White Sales, Inc.* (2019) 586 U.S. ___ [139 S.Ct. 524, 530, 202 L.Ed.2d 480] [the issue of arbitrability is for the court to decide unless the parties' agreement clearly and unmistakably provides otherwise].)

In sum, because there is no clear and unmistakable evidence that Zaghi agreed to arbitrate any disputes with Ralphs when she accepted Instacart's Terms of Service, the delegation clause included in Instacart's arbitration provision does not apply here. The court, therefore, properly decided the question of whether Ralphs could enforce that arbitration provision.

3. **Ralphs is not a third-party beneficiary of Instacart's arbitration provision.**

Ralphs next contends the court erred in finding the grocery store is not a third-party beneficiary of Instacart's arbitration provision. Again, we disagree.

A third party may enforce a contract made expressly for its benefit. (Civ. Code, § 1559.) To enforce a contract, the third party must establish the following elements: (1) the third party would in fact benefit from the contract; (2) a motivating purpose of the contracting parties was to provide a benefit to the third party;

13

and (3) permitting the third party to enforce the contract against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties. (*Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, 830 (*Goonewardene*).) The third party " 'bears the burden of proving that the promise he seeks to enforce was made to him personally or to a class of which he is member.' " (*Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1024.)

A third-party beneficiary may enforce only those terms of the contract that were made for its benefit. (*Clark v. California Ins. Guarantee Assn.* (2011) 200 Cal.App.4th 391, 398.) Thus, to compel arbitration of a dispute, the third party must show that the arbitration provision included in the contract, and not just some other part of that contract, was made expressly for the third party's benefit. (*Fuentes v. TMCSF, Inc.* (2018) 26 Cal.App.5th 541, 552.)

As we explained above, neither Instacart's arbitration provision nor any other portion of the company's Terms of Service requires an Instacart customer to arbitrate with third parties disputes that might relate to the customer's use of Instacart's online shopping platform. Likewise, neither the arbitration provision nor any other portion of Instacart's Terms of Service suggests that a third party may invoke the arbitration provision against an Instacart customer. Since Instacart and its customers are the only parties mentioned in the arbitration provision and the portions of Instacart's Terms of Service addressing arbitration, Ralphs hasn't satisfied the first element of the third-party beneficiary test—i.e., demonstrating that it would directly benefit from Instacart's arbitration provision. (*Goonewardene*,

14

*supra*, 6 Cal.5th at p. 830; see also *Ford Motor Warranty Cases* (2023) 89 Cal.App.5th 1324, 1338–1340 [where arbitration provision is expressly limited to enumerated parties, a nonsignatory that is not one of those enumerated parties cannot directly benefit from that provision]; see also *Ngo v. BMW of North America, LLC* (9th Cir. 2022) 23 F.4th 942, 947 ["Language limiting the right to compel arbitration to a specific [customer] and a specific [company] … means that extraneous third parties may not compel arbitration."].)

Further, the language in the arbitration provision limiting arbitration to disputes between Instacart and its customers suggests Instacart and Zaghi did not intend or expect a third party to benefit from Instacart's arbitration provision. (*Martinez*, *supra*, 51 Cal.App.5th at p. 967 [the parties' mutual intent is to be ascertained solely from the contract language if that language is clear and explicit].) Indeed, the inclusion of other provisions in Instacart's Terms of Service that expressly benefit third-party retailers like Ralphs, such as the release of claims and limitation of liability clauses, shows that Instacart and Zaghi knew how to create promises that expressly benefit third parties. The omission of such language in Instacart's arbitration provision and other portions of the company's Terms of Service discussing arbitration shows Instacart and Zaghi did not intend or expect the arbitration provision to apply to third parties. (See *Ford Motor Warranty Cases*, *supra*, 89 Cal.App.5th at p. 1339 [the signatories easily could have articulated an intent to benefit the nonsignatory by naming the nonsignatory as a person entitled to compel arbitration]; see also *White v. Western Title Ins. Co.* (1985) 40 Cal.3d 870, 881–882, fn. 4 [contracting parties' mention of one thing is the exclusion of another].)

15

For the foregoing reasons, Ralphs is not a third-party beneficiary of the arbitration provision in Instacart's Terms of Service. The court, therefore, properly denied Ralphs's motion to compel arbitration.[5]

## DISPOSITION

The order denying Ralphs's motion to compel arbitration is affirmed. Zaghi shall recover her costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

LAVIN, Acting P. J.

WE CONCUR:

EGERTON, J.

HEIDEL, J.[*]

---

[5] In light of this conclusion, we need not address Ralphs's claim that the court erred in denying arbitration on the alternative ground that Zaghi's claims against the grocery store do not fall within the scope of Instacart's arbitration provision.

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.