Filed 12/4/20  Gree Gate Services, LLC v. Koetting CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GREEN GATE SERVICES, LLC et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> DANIEL KOETTING et al., <br><br> Defendants and Appellants. | A158316 <br><br> (Humboldt County <br> Super. Ct. No. CV190030) |

The appellants in this case are Redondo Management, LLC (Redondo), its managing partner Mark Koetting, Rockhill Consulting Group, LLC (Rockhill), and its president Daniel Koetting (collectively, appellants).[1]  The respondents are Clear Loan Solutions, LLC (Clear Loan) and Green Gate Services, LLC (Green Gate) (collectively, respondents), tribal lending entities who entered into contracts with Redondo and Rockhill to manage their online lending programs.

In challenging the trial court's confirmation of an arbitration award in favor of respondents, appellants contend the arbitrator exceeded his authority by:  (1) determining the Koettings were subject to arbitration as alter egos of Redondo and Rockhill; and (2) awarding respondents damages in

---

[1]      For clarity and brevity, we use the Koettings' first names.  No disrespect is intended.

1

excess of an express contractual provision that limited their compensation. We disagree with the latter contention but agree with the first, as respondents did not show that the Koettings impliedly consented to arbitration or that clear and unmistakable evidence showed the Koettings consented to have the arbitrator determine the gateway question of whether they, as nonsignatories, were individually bound by the arbitration agreement. Accordingly, the judgment is reversed and remanded with directions.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

Respondents are tribal lending entities organized under the laws of the Big Lagoon Rancheria (the tribe), a federally recognized tribe of Yurok and Tolowa Indians. The tribe formed respondents to engage in marketing and servicing of small-dollar short-term loans made over the Internet.

In 2013, respondents retained Redondo and Rockhill to manage their online lending programs. Green Gate entered into a Consultant and Independent Contractor Agreement with Rockhill, and Clear Loan entered into a substantially identical agreement with Redondo. Each agreement defined the terms " 'Party' " or " 'Parties' " to mean Green Gate and Rockhill, and Clear Loan and Redondo, respectively. Daniel signed the agreement

---

[2] Parts of the record and the parties' briefs pertaining to the arbitration proceeding were filed under seal in this court (Cal. Rules of Court, rule 8.46(b)), but some of the relevant facts are otherwise already in the public record. At oral argument, the court requested that the parties identify the specific factual material in the record each party believes must remain sealed. Based on the parties' responses and in light of the facts that are otherwise known to be in the public record, this opinion narrowly excludes only certain details claimed by respondents as trade secrets. (Cal. Rules of Court, rule 2.550(d); *NBC Subsidiary (KNBC TV) v. Superior Court* (1999) 20 Cal.4th 1178, 1222, fn. 46.)

2

with Green Gate in his capacity as president of Rockhill, and Mark signed the agreement with Clear Loan in his capacity as managing partner of Redondo.

Under the agreements, Redondo and Rockhill were responsible for acquiring capital for the loans, contracting with vendors and service providers, ensuring regulatory compliance, preparing financial statements, and managing respondents' banking relationships. According to the agreements, respondents agreed to pay Redondo and Rockhill a "salary" and performance fee. According to a "Compensation Schedule" attached to the agreements, respondents would first receive a specified portion of profits based on a formula before Redondo and Rockhill received their agreed payments and fees.

The agreements each contain a section on "Dispute Resolution" requiring the parties to arbitrate any "dispute arising under this Agreement," including claims of breach and "any dispute over the proper interpretation of the terms and conditions hereof." Relevant to this appeal is section 8(a)(ii), which provides "[t]he remedies available through arbitration are limited to enforcement of the provisions of this Agreement."

In 2017, the parties' relationships began to deteriorate, and Redondo and Rockhill began winding down the loan portfolios. Appellants allegedly implemented a "remarketing program," telling loan customers that the tribe would no longer be making loans and persuading the customers to continue borrowing from new lenders unaffiliated with the tribe. In January 2018, respondents terminated the agreements and instructed Redondo and Rockhill not to make any payments to themselves or third parties of any money derived from the lending partnership.

In late January 2018, Green Gate filed a demand for arbitration against Rockhill and Daniel.[3]  In February 2018, Rockhill filed a demand for arbitration and counterclaim against Green Gate, and Redondo filed a demand for arbitration against Clear Loan.  In March 2018, Clear Loan filed counterclaims against Redondo and Mark.

Respondents' claims against appellants included breach of contractual and fiduciary duties (for diverting respondents' customers to new lenders), fraud, theft, failure to safeguard customer data, payment to themselves following termination, and failure to transfer revenue owed.  Respondents alleged the Koettings operated Redondo and Rockhill as their alter egos.  In turn, Redondo and Rockhill accused respondents of breaching the agreements by failing to "enhance compliance" of the lending program, using licensed intellectual property following the termination of the agreements, lacking good faith, and interfering in the winding down process.

Early in the arbitration, appellants filed an answering statement denying the allegations in Green Gate's arbitration demand and asserting that the Koettings were not proper parties to the agreements or subject to the arbitrator's jurisdiction.  A few months later, in May 2018, Redondo and Rockhill jointly filed a "Motion Relating to Joinder of Parties" (joinder motion) in which they "formally object[ed] to the inclusion of" the Koettings in the arbitration and requested dismissal of the Koettings.  Redondo and Rockhill further requested that the arbitrator "hold" any ruling on the joinder motion until an upcoming status conference due to their concern that immediate dismissal of the Koettings would require Redondo and Rockhill to

---

[3]     Green Gate's arbitration demand also named Rivo Holdings, LLC, another entity belonging to Daniel that was eventually dismissed from arbitration.

defend a separate suit simultaneously with the arbitration. The arbitrator eventually denied the motion, finding that respondents' allegations against the Koettings were "so intertwined" with the agreements that the Koettings were estopped from objecting to being parties to the arbitration.

During the arbitration, the arbitrator issued "Procedural Order #2 Regarding Stipulation of the Parties Concerning Filing of Additional Proceedings," which indicated that (1) "Claimants (Rockhill and Redondo)" would provide respondents with login and password information to access the customer lending program databases, and (2) respondents "will not prior to the end of arbitration proceedings file a lawsuit or seek any type of injunctive proceeding against the loan management software companies, the service providers . . . or other affiliates or vendors of the Claimants . . . unless the Respondents have given the Claimants and the arbitrator 5 business days['] prior written notice in order for the Claimants to have an opportunity to seek an emergency hearing in front of the arbitrator."

After briefing, two days of hearing, and post-hearing briefs, the arbitrator issued a final award in favor of respondents. The arbitrator found that appellants breached the covenant of good faith and fair dealing to act for the benefit of respondents by "remarketing" respondents' customers to unrelated entities controlled by the Koettings and writing off loans belonging to respondents so that new business could be generated for the other Koetting entities. Specifically, the arbitrator found appellants "liable to Respondents for damages which arise from their breaches, including the amount of loans they diverted to their own entities. Had the funds not been loaned to unrelated entities controlled by the Koettings, the loaned funds should have remained in the bank accounts belonging to [respondents] since neither [Green Gate] nor [Clear Loan] was making new loans." The arbitrator

5

awarded a monetary sum to Clear Loan and a larger monetary sum to Green Gate "for loans made to customers of" respondents. The arbitrator further ruled that the Koettings were jointly and severally liable with Redondo and Rockhill.

Thereafter, appellants filed a motion with the arbitrator for modification of the final award. Notably, they reasserted their objection that the Koettings were not proper parties to the arbitration and argued that the court, not the arbitrator, must decide whether nonsignatories may be required to arbitrate. Appellants also challenged the amounts of the final award as exceeding the contractual limitation of remedies set forth in section 8(a)(ii) of the agreements. The arbitrator summarily denied the motion.

In January 2019, respondents petitioned the trial court to confirm the arbitration award. Daniel, Rockhill, and Redondo opposed the petitions, filed a cross-petition to vacate the arbitration award, and moved to dismiss Daniel from the proceedings. Mark moved to quash service of summons for lack of personal jurisdiction.

After a hearing on the matters, the trial court ultimately issued orders granting respondents' petition to confirm the arbitration award, denying the cross-petition to vacate the award, and denying the motions to dismiss and quash summons. The court subsequently entered judgment in favor of respondents and against appellants. This appeal followed.

## DISCUSSION

"Any party to an arbitration in which an award has been made may petition the court to confirm, correct or vacate the award." (Code Civ. Proc., § 1285.) The court "shall" vacate an arbitration award if the arbitrator exceeded his or her powers and the award cannot be corrected without affecting the merits of the decision. (Code Civ. Proc., § 1286.2, subd. (a)(4).)

6

We review the trial court's order confirming the arbitration award de novo. (*Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1435.)

## A. Nonsignatories in Arbitration

"[A]n arbitrator has no power to determine the rights and obligations of one who is not a party to the arbitration agreement." (*American Builder's Assn. v. Au-Yang* (1990) 226 Cal.App.3d 170, 179.) There is a logical reason for this. "If an arbitrator, rather than a trial court, were to determine whether an arbitration provision were operative against a nonsignatory, a stranger to the agreement might be subjected to and be bound by an arbitration to which such stranger had not consented and would be without effective review." (*Ibid*.)

Thus, whether an arbitration agreement is operative against a nonsignatory is generally a question for the trial court and reviewed de novo. (*Benroya v. Willis* (2018) 23 Cal.App.5th 462, 473 (*Benaroya*).) " '[P]arties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by "clear and unmistakable" evidence.' " (*Moritz v. Universal City Studios LLC* (2020) 54 Cal.App.5th 238, 247.) This is a " 'heightened' standard of proof.' " (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 782 (*Ajamian*).) "[A] contract's silence or ambiguity about the arbitrator's power in this regard cannot satisfy the clear and unmistakable evidence standard." (*Ibid*., citing *First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 943–945 (*First Options*).)

While there are several recognized theories for compelling nonsignatories to arbitration, including when a nonsignatory is the alter ego of a party to the arbitration agreement (*Suh v. Superior Court* (2010) 181

7

Cal.App.4th 1504, 1513 (*Suh*)),[4] it remains the case that an arbitrator's exercise of jurisdiction over a nonsignatory on an alter ego theory cannot occur in the absence of clear and unmistakable evidence that the nonsignatory consented to delegate that threshold arbitrability question to the arbitrator. (*Benaroya, supra*, 23 Cal.App.5th at pp. 474–475.)

Respondents contend this case is similar to *Douglass v. Serenivision, Inc.* (2018) 20 Cal.App.5th 376 (*Douglass*), in which the court concluded that the conduct of a nonsignatory (Douglass) demonstrated his implicit consent to arbitration as well as to the arbitrator's power to decide arbitrability. In answering the arbitration demand, Douglass did not object to the arbitrator's jurisdiction, and he affirmed at a preliminary hearing that he was " 'appear[ing] voluntarily and submit[ting] to the jurisdiction of this Arbitrator.' " (*Id.* at p. 382.) In letters to the opposing party's counsel and to the arbitrator, Douglass reaffirmed that he was voluntarily appearing in the arbitration because of its efficiency, but that his appearance was conditioned on the opposing party posting a bond to cover his attorney fees. (*Ibid.*) It was only after the arbitrator denied his bond request that Douglass sought to withdraw. (*Ibid.*) The appellate court held that Douglass had clearly and unmistakably, through his words and conduct, consented to have the arbitrator decide which disputes were arbitrable because "he willingly and without objection participated in the arbitration proceedings for over 10 months" while also "avail[ing] himself of the arbitrator's authority when he asked the arbitrator to issue an order requiring Serenivision to post a bond." (*Id.* at p. 388.) "Douglass's participation in the arbitration was no accident,"

---

[4] Other theories involve incorporation by reference, assumption, agency, estoppel, and third-party beneficiaries. (*Suh, supra*, 181 Cal.App.4th at p. 1513.)

as he indicated "he was making a conscious and tactical decision to participate in the arbitration forum because it was cheaper." (*Id.* at pp. 388–389.)

Respondents' reliance on *Douglass* is misplaced. Here, the Koettings objected to the arbitrator's jurisdiction in an answering statement filed at the outset of the arbitration proceeding and before any adverse decision of the arbitrator, and they never expressed their "voluntary" participation in arbitration. (*Douglass*, *supra*, 20 Cal.App.5th at p. 389.) As *Douglass* acknowledged, "consent to arbitration (or to the arbitrator's power to decide arbitrability) will not be inferred solely from a party's conduct of appearing in the arbitral forum to object to the arbitrator's exercise of jurisdiction, . . . if the party makes that objection 'prior to participat[ing]' in the arbitration" (*id.* at p. 387), as the Koettings did here.

Respondents nevertheless contend the Koettings clearly and unmistakably consented to the arbitrator's power to decide his own jurisdiction because "appellants" filed a motion that (1) sought dismissal of the Koettings and submitted the alter ego issue for the arbitrator's decision, and (2) asked the arbitrator to delay his ruling until a prehearing conference. Respondents further argue that "appellants" availed themselves of the arbitrator's authority by "obtaining an order from the Arbitrator prohibiting [respondents] from suing them in court."

Again, we are not persuaded. The record demonstrates the joinder motion was filed by Redondo and Rockhill, not the Koettings,[5] and the order

---

[5] At oral argument, respondents' counsel argued there was sufficient evidence of the Koettings' consent for the arbitrator to decide the alter ego issue. Specifically, they point to appellants' post-award motion for modification which referred to the Koettings as the parties requesting to be dismissed, as well as the Koettings' inclusion in the list of parties submitting

9

that respondents reference memorialized a stipulation between respondents and "Claimants," expressly defined as "Rockhill and Redondo." Likewise, Procedural Order #2 made no mention of the Koettings or of any efforts on their behalf to obtain any relief from the arbitrator. Were we to attribute these examples of Redondo's and Rockhill's actions to the Koettings without an alter ego finding by the proper decisionmaker, we would be " 'plac[ing] the proverbial cart before the horse.' " (*Benaroya*, *supra*, 23 Cal.App.5th at p. 468, citing *Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 252.)

Furthermore, "merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, *i.e.*, a willingness to be effectively bound by the arbitrator's decision on that point." (*First Options*, *supra*, 514 U.S. at p. 946.) To the contrary, because the Koettings objected to the arbitrator's jurisdiction over them from the very beginning, "one naturally would think that [the Koettings] did *not* want the arbitrator[] to have binding authority over them." (*Ibid.*)

Significantly, the instant matter more closely resembles *Benaroya*, where the appellate court concluded a nonsignatory did not clearly and unmistakably delegate the arbitrability issue to the arbitrator because he "repeatedly disputed the arbitrator's power to determine the alter ego issue, and never voluntarily submitted to the arbitrator's jurisdiction." (*Benaroya*, *supra*, 23 Cal.App.5th at p. 474.) Respondents argue that *Benaroya* is distinguishable because the nonsignatory there specifically argued that

---

a reply brief to the joinder motion. But in all of these instances, appellants were unequivocally objecting to the arbitrator's jurisdiction over the Koettings. Any imprecise wording used in the modification motion demonstrates, at best, an ambiguity as to the Koettings' consent, which is insufficient to meet the heightened clear and unmistakable standard. (*First Options*, *supra*, 514 U.S. at pp. 943–945.)

arbitrability should be decided by the trial court rather than the arbitrator, whereas appellants forfeited the "who decides" issue on appeal by not raising it with the arbitrator. (See *Comerica Bank v. Howsam* (2012) 208 Cal.App.4th 790, 830 [party forfeited argument by withdrawing from arbitration and raising issue in court collaterally for first time].)

We are not inclined to find forfeiture, as appellants timely and repeatedly objected to the arbitrator's jurisdiction and specifically raised the "who decides" issue before the arbitrator, albeit in their motion for modification of the arbitration award. Furthermore, and in any event, we have discretion to consider new legal arguments on appeal that present a question of law to be applied to undisputed facts. (*RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511, 1518.) Our resolution of the "who decides" question does not involve disputed facts regarding the Koettings' conduct, only whether the undisputed evidence of their conduct met the clear and unmistakable threshold.

On this score, we emphasize again that the joinder motion seeking the Koettings' dismissal was brought by Redondo and Rockhill, not the Koettings. Furthermore, the alter ego question—though certainly important to the broader issue of the extent of liability—was also directly related to the issue of whether the Koettings were bound by the arbitration agreement. (*Suh, supra*, 181 Cal.App.4th at p. 1513.) Redondo's and Rockhill's mere argument against arbitrability on an alter ego theory was not clear and unmistakable evidence of the Koettings' consent to be bound by the arbitrator's ruling. (*First Options, supra*, 518 U.S. at p. 946.)[6]

---

[6] Contrary to respondents' contention, *George Day Constr. Co. v. United Broth. of Carpenters* (9th Cir. 1984) 722 F.2d 1471 does not compel otherwise. *George Day* predates *First Options* and did not apply the high court's clear and unmistakable evidence standard. Indeed, *George Day* seemingly

In sum, the arbitrator was not the proper decisionmaker to determine whether the Koettings were bound, in their individual capacities, to the arbitration provisions in the agreements. Respondents nevertheless argue that the trial court's confirmation of the arbitration award may still be affirmed by independent review. We disagree. "[T]he error in permitting the arbitrator to decide whether [the Koettings] could be compelled to arbitrate as the alter ego of [Redondo/Rockhill] is not subject to harmless error" because "[t]he wrong decision maker decided the issue; the arbitrator exceeded his authority by purporting to compel appellant[s] to arbitrate and making [them] liable for the award as [Redondo/Rockhill's] alter ego[s]." (*Benaroya, supra*, 23 Cal.App.5th at p. 475.) Furthermore, we are unpersuaded by respondents' contention that the trial court made an implied alter ego finding, as respondents merely cite the arbitrator's ultimate findings of alter ego liability without identifying any other evidence presented to the trial court that might have supported such an implied finding.

For all of these reasons, we conclude the Koettings are entitled to relief from the arbitration award.

---

required that a party take extensive measures to preserve the arbitrability question for the court. (*George Day*, at p. 1476 [in determining party implicitly consented to arbitrator's determination of arbitrability, court notes party "could have taken the initiative by seeking declaratory and injunctive relief prior to the commencement of arbitration" to obtain independent judicial examination of arbitrability question].) Rather than follow *George Day*'s dated analysis, we shall adhere to the high court's dual admonitions that arbitrability is an issue for the trial court to decide unless clear and unmistakable evidence shows the parties' delegation of the issue to the arbitrator, and that silence and ambiguity cannot commit the question of arbitrability to an arbitrator. (*First Options, supra*, 514 U.S. at pp. 945–946; *Benroya, supra,* 23 Cal.App.5th at p. 473.)

**B. Remedial Authority**

Appellants contend the arbitrator exceeded his remedial powers by awarding respondents the full principal amounts of the loans diverted from respondents to other lenders.  According to appellants, the arbitration agreement expressly limited the arbitrator's remedial authority to "enforcement of the provisions of the Agreement[s]," and this meant that respondents were only entitled to damages based on the formula set forth in the compensation schedule.

"[A]rbitrators may not award remedies expressly forbidden by the arbitration agreement or submission." (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 381 (*Advanced Micro*).)  But an award "will be upheld so long as it was even arguably based on the contract; it may be vacated only if the reviewing court is *compelled* to infer the award was based on an extrinsic source." (*Id.* at p. 381.)  In *Advanced Micro*, the Supreme Court rejected the argument "that arbitrators may not award a party benefits different from those the party could have acquired through performance of the contract—the cases do not support [this] position.  No exact correspondence is required between the rights and obligations of a party had the contract been performed and the remedy an arbitrator may provide for the other party's breach." (*Ibid.*)

We conclude the arbitrator did not exceed his remedial powers.  The arbitrator awarded a monetary sum to Clear Loan and a larger sum to Green Gate to enforce the covenant of good faith and fair dealing.  Not only is the covenant implied in every contract (see *Bushell v. JPMorgan Chase Bank, N.A.* (2013) 220 Cal.App.4th 915, 928–929; *Dieckman v. Regency GP LP* (Del. 2017) 155 A.3d 358, 367–368), but section 5(d) of the agreements expressly provides that upon termination of the agreements, "[i]n order to preserve the

13

goodwill of each Party with the customer, both Parties *shall act in good faith* and cooperate wherever possible in order to ensure a smooth and orderly termination of their relationship and the termination and wind-down of the Consumer Lending Program, regardless of the reason for termination." (Italics added.) Accordingly, the damage awards were "rationally derived from the contract and the breach," and the arbitrator had "the authority to fashion relief [he] consider[ed] just and fair under the circumstances existing at the time of arbitration." (*Advanced Micro*, *supra*, 9 Cal.4th at p. 383.)

The compensation formula was not an express limitation on this power. (See *Advanced Micro*, *supra*, 9 Cal.4th at p. 383 [rights and obligations of parties under contract are not "an unfailing guide to the remedies available" upon breach].) The compensation schedule was not expressly cited in the dispute resolution section of the agreements, and the formula pertained only to the manner of profit sharing. As discussed, the limitation of remedies to "enforcement" of the agreements rationally entailed providing relief for breaches of the duty to act in good faith during winddown. Accordingly, we conclude the arbitrator's awards to Clear Loan and to Green Gate did not exceed any express contractual limitations on arbitration remedies.

## DISPOSITION

The judgment is reversed. The case is remanded to the trial court with directions to: (1) set aside its rulings denying appellants' petition to vacate the award and granting respondents' petition to confirm the award; and (2) enter new and different orders granting appellants' petition to vacate the award as to the Koettings, and granting respondents' petition to confirm the

14

award only as to Redondo and Rockhill.[7]  Each side shall bear its own costs on appeal.

_____
Fujisaki, Acting P. J.

WE CONCUR:

_____
Petrou, J.

_____
Jackson, J.

A158316

---

[7]     We express no opinion on the availability of other mechanisms for respondents to add the Koettings to the judgment as alter egos.

15