Filed 11/29/21  Scott v. Windsor Sacramento Estates CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| GABRIEL SCOTT, Individually and as Successor in Interest, etc., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> WINDSOR SACRAMENTO ESTATES, LLC, et al., <br><br> Defendants and Appellants. | C091077 <br><br> (Super. Ct. No. 34-2017-00218038-CU-PO-GDS) |

Windsor Sacramento Estates, LLC, doing business as Windsor Care Center of Sacramento (WCCS) et al. appeal from an order of the superior court denying their motion to compel arbitration as to the wrongful death claim asserted by plaintiff Gabriel Scott, a nonsignatory to WCCS's arbitration agreement.[1]  The sole contention on appeal

---

[1]  Defendants and appellants are WCCS, Windsor Haysac Holdings, LLC (Windsor Haysac), S&F Management Company, Inc., S&F Management Company, LLC, Lawrence Feigen, and Lee Samson.  Windsor Haysac and the S&F Management entities

is whether the court or the arbitrator would determine that plaintiff was or was not bound by the arbitration agreement he did not sign.

The arbitration agreement contained a delegation clause providing that "any disputes about the validity, interpretation, construction, performance, and enforcement of this Agreement, will be determined by submission to individual arbitration and not by lawsuit or resort to court process." "A delegation clause requires issues of interpretation and enforceability of an arbitration agreement to be resolved by the arbitrator." (*Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1559.) WCCS maintains that the delegation clause required the arbitrator, not the court, to decide whether plaintiff's wrongful death claim was arbitrable. The trial court, however, ruled that plaintiff was not a party to the arbitration and therefore his wrongful death cause of action was not subject to arbitration.

WCCS contends the court erred. We disagree. As cases interpreting the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) have held, "the threshold issue of whether the delegation clause is even applicable to a certain party must be decided by the Court." (*Soto v. American Honda Motor Co., Inc.* (N.D.Cal. 2012) 946 F.Supp.2d 949, 954 (*Soto*).) We will affirm the order denying the motion to compel arbitration of plaintiff's wrongful death cause of action.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 25, 2017, plaintiff filed a complaint alleging causes of action for (1) negligence/negligence per se; (2) abuse/neglect of a dependent adult; (3) wrongful death; (4) violation of patient's bill of rights (Health & Saf. Code, § 1430);

___

allegedly managed and operated WCCS and Feigen and Samson allegedly were the managing agents of WCCS, the S&F Management entities, and Windsor Haysac. Windsor Haysac, Feigen, and Samson jointly filed a separate appeal from that of WCCS and the S&F Management entities. However, the opening briefs submitted by both groups of appellants are identical and the reply briefs make the same arguments. Accordingly, we refer to all defendants collectively as WCCS.

(5) fraud/misrepresentation; (6) constructive fraud; and (7) unfair business practices (Bus. & Prof. Code, § 17200). Plaintiff brought the action as successor in interest to his deceased father, Timothy Scott, as well as in plaintiff's individual capacity.

Plaintiff alleged that his father with advanced dementia was a resident at WCCS's skilled nursing facility dependent on WCCS for basic care, but was neglected and left unsupervised, leading to injuries, weight loss, dehydration, pain, kidney failure, and ultimately his death.

On June 1, 2016, at the time plaintiff's father was admitted to WCCS, Sally Gordon, his ex-wife, signed a resident-facility arbitration agreement on his behalf under a durable power of attorney for health care.

Article No. 1 of the arbitration agreement provided: "It is understood that any dispute between the parties, including but not limited to intentional tort, breach of contract, fraud and/or misrepresentation, statutory causes of action (including all California Welfare and Institutions Code sections), claims for alleged violations of the Elder Abuse and Dependent Adult Civil Protection Act, the Unfair Competition Law, the False Advertising Law, or the Consumer Legal Remedies Act, regardless of the remedy sought pursuant to any of the above-listed acts, and/or any disputes about the validity, interpretation, construction, performance, and enforcement of this Agreement, will be determined by submission to individual arbitration and not by lawsuit or resort to court process. Resident and Facility, as parties to this Agreement, are giving up their Constitutional rights to have a dispute under this Agreement decided in a court of law before a jury and any right to bring an action on a class basis, and instead are accepting the use of individual arbitration. This Agreement shall be governed by, interpreted under, and enforced in accordance with the substantive and procedural provisions of the Federal Arbitration Act, 9 U.S.C. sections 1-16, in its entirety. Any reference to the law of any state in this Agreement or in any other agreement between the parties shall not constitute a choice of that law to govern, interpret, or enforce this Agreement. The parties

3

specifically agree, without limitation, that California Code of Civil Procedure section 1281.2(c) shall not apply to any dispute between the parties."

Article No. 4 provided: "This Agreement shall be binding for any dispute within thirty (30) days of signature. This Agreement may be rescinded by written notice within thirty (30) days of signature. This Agreement is binding on all parties, including their personal representatives, successors, family members and heirs."

Article No. 5 provided: "In the event a court having jurisdiction finds any portion of this Agreement unenforceable, that portion shall not be effective and the remainder of the Agreement shall remain effective."

WCCS brought successive motions to compel arbitration, the first of which the court denied without prejudice, ruling that defendants failed to show that a valid, binding arbitration agreement existed.

On the second motion, the trial court ruled that "the arbitration agreement is 'clear and unmistakable' that any disputes about the validity, interpretation, construction, performance, and enforcement of the arbitration agreement are for the arbitrator to decide." The court rejected plaintiff's argument that the arbitration agreement was unconscionable, explaining that, where an arbitration contains a delegation clause, any claim of unconscionability must be specifically directed to the delegation clause. Pursuant to the delegation clause, the court granted "the motion to compel arbitration for the arbitrator to decide the issues of validity, interpretation, construction, performance, and enforcement of the arbitration agreement as to Decedent's causes of action."

However, the court ruled that, because plaintiff was not a party to the agreement, his wrongful death cause of action was not subject to arbitration. The court distinguished *Ruiz v. Podolsky* (2010) 50 Cal.4th 838 (*Ruiz*), which held that an arbitration agreement applied to the wrongful death claims of nonsignatories whose claims sounded in medical malpractice/professional negligence. The court relied on the policy evinced by the medical malpractice arbitration statute, Code of Civil Procedure section 1295, which was

4

"designed to permit patients who sign arbitration agreements to bind their heirs in wrongful death actions." (*Ruiz*, at p. 849.) The trial court determined that plaintiff's wrongful death claim did not allege medical malpractice/professional negligence resulting in wrongful death but rather elder abuse consisting of the failure to provide care, citing *Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835, 842-843.

On appeal, WCCS does not contest the trial court's ruling based on *Avila* that *Ruiz* did not apply. Indeed, the opening briefs do not mention *Ruiz*. The issue raised on appeal is a limited one: in light of the delegation clause upheld by the trial court, whether it was proper for the court, instead of the arbitrator, to determine that the wrongful death claim asserted by plaintiff, a nonsignatory to the arbitration agreement, was not subject to arbitration.

**DISCUSSION**

Our review is de novo. There is no conflict in the evidence and we independently interpret the contract. (*Smythe v. Uber Technologies, Inc.* (2018) 24 Cal.App.5th 327, 332; *Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 890; see also *Daniels v. Sunrise Senior Living, Inc.* (2013) 212 Cal.App.4th 674, 680 (*Daniels*) ["Whether an arbitration agreement is binding on a third party (e.g., a nonsignatory) is a question of law subject to de novo review"].)

WCCS contends that, under the delegation clause, the trial court was required to submit the "gateway question" as to the arbitrability of plaintiff's wrongful death cause of action to the arbitrator. WCCS's framing of the issue, however, omits mention of the undisputed fact that plaintiff was a not a signatory to the arbitration agreement. With that fact taken into account, the issue is whether the delegation clause required the arbitrator, not the court, to decide the arbitrability of a wrongful death claim of a nonsignatory.

Courts interpreting the FAA, which governs WCCS's arbitration agreement, have held that determination of the "threshold issue" of whether a delegation clause is

5

applicable to a nonsignatory is for the court. (See *Soto, supra*, 946 F.Supp.2d at p. 954; *Jurosky v. BMW of North America, LLC* (S.D.Cal. 2020) 441 F.Supp.3d 963, 969 [" '[A] delegation clause granting authority to an arbitrator to decide issues of application, enforceability, or interpretation are [*sic*] only applicable to the parties of the agreement,' " quoting *In re Midland Credit Management, Inc. Telephone Consumer Protection Litigation* (S.D.Cal. Jan. 31, 2019, No. 11md2286-MMA (MDD)) 2019 U.S.Dist. Lexis 15810, *52]; see also *ibid.* ["the Court must first decide which parties are bound by the delegation clauses before the arbitrator can determine the applicability, enforceability, and interpretation of the arbitration agreements"].)

In *In re Toyota Motor Corp. Hybrid Brake Marketing, Sales, Practices and Products Liability Litigation* (C.D.Cal. 2011) 828 F.Supp.2d 1150, 1159, footnote 5, the court explained: "As a threshold matter, Toyota argues that the arbitrator, rather than this Court, should decide the issue of whether a nonsignatory such as Toyota may compel Plaintiffs to arbitrate their claims because the Purchase Agreements expressly provide that the arbitrator should decide issues of interpretation, scope, and applicability of the arbitration provision. [Citation.] The Court disagrees. While parties may agree to explicit provisions enabling the arbitrator to decide issues of the applicability and scope of an arbitration agreement, these provisions are part of the agreement and only apply to signatories. Toyota cannot invoke the right to the benefits of the Purchase Agreement because it was not a party to the agreement; thus, the threshold issue of whether Toyota, as a nonsignatory, may compel Plaintiffs to submit to arbitration under the Purchase Agreements must be decided by this Court."

Similarly, California cases interpreting the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) hold that " 'an arbitrator has no power to determine the rights and obligations of one who is not a party to the arbitration agreement' " and that " '[t]he question of whether a nonsignatory is a party to an arbitration agreement is one for the trial court in the first instance.' " (*Benaroya v. Willis* (2018) 23 Cal.App.5th 462, 469;

6

*American Builder's Assn. v. Au-Yang* (1990) 226 Cal.App.3d 170, 179 ["If an arbitrator, rather than a trial court, were to determine whether an arbitration provision were operative against a nonsignatory, a stranger to the agreement might be subjected to and be bound by an arbitration to which such stranger had not consented and would be without effective review"].)

WCCS relies on *Henry Schein, Inc. v. Archer & White Sales, Inc.* (2019) 586 U.S. ___ [202 L.Ed.2d 480] (*Henry Schein*), in which the United States Supreme Court said: "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." (*Id.* at p. ___ [202 L.Ed.2d at p. 487].)

However, *Henry Schein* also said: "To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." (*Henry Schein, supra*, 586 U.S. at p. ___ [202 L.Ed.2d at p. 487].) Accordingly, courts have concluded that "[*Henry*] *Schein* simply rejected the 'wholly groundless' exception to arbitrability delegations. [Citation.] It did not change—to the contrary, it reaffirmed— the rule that courts must first decide whether an arbitration agreement exists at all." (*Lloyd's Syndicate 457 v. FloaTEC, L.L.C.* (5th Cir. 2019) 921 F.3d 508, 515, fn. 4, citing *Henry Schein, supra*, 586 U.S. at p. ___ [202 L.Ed.2d at p. 487]; see also *Williams v. Medley Opportunity Fund II, LP* (3rd. Cir. 2020) 965 F.3d 229, 237, fn. 7; *Berkeley County School Dist. v. Hub Int'l* (4th Cir. 2019) 944 F.3d 225, 234, fn. 9; *Anderson v. Charter Communications, Inc.* (6th Cir. June 11, 2021, No. 20-5894) ___ Fed.Appx. ___ [2021 U.S.Dist. Lexis. 17534, *3-*6]; *Ferrell v. SemGroup Corp.* (N.D.Okla. 2020) 485 F.Supp.3d 1334, 1339; *Schoenfeld v. Mercedes-Benz USA, LLC* (S.D.Ohio Mar. 30, 2021, No. 3:20-cv-159) ___ F.Supp.3d ___ [2021 U.S.Dist. 60644, *7-*8] (*Schoenfeld*);

7

*Belyea v. GreenSky, Inc.* (N.D.Cal. July 2, 2020, No. 20-cv-1693-JSC) 2020 U.S.Dist. Lexis 116809, *17-*19.)

Moreover, *Henry Schein* did not involve a nonsignatory. (See *Schoenfeld, supra*, 2021 U.S.Dist. Lexis at p. *6 ["*Henry Schein* is factually distinguishable in that the parties to the lawsuit were also parties to the arbitration agreement"].)

A commentator aptly described the circumstances of a case such as this one: "Consider nonsignatory plaintiffs. Suppose an individual files a wrongful death action and the defendant responds by invoking a delegation clause in its contract with the decedent. Even after *Henry Schein*, a judge in a state that treats wrongful death claims as 'independent' must disregard the delegation provision and decide for itself whether the plaintiff is bound under third party beneficiary principles. Unlike a scope challenge, where the plaintiff merely argues 'I did not agree to arbitrate *the merits of that claim*,' a nonsignatory plaintiff contends 'I did *not* agree to arbitrate *anything* (including whether I agreed to arbitrate the merits of a claim).' Thus, the court must retain jurisdiction to 'assure itself that the non-signatory has agreed to arbitrate *at all*.' " (Horton, *Infinite Arbitration Clauses* (2020) 168 U. Pa. L.Rev. 633, 684.)

In California, "wrongful death claims 'are not derivative claims but are independent actions accruing to a decedent's heirs.' " (*Hass v. RhodyCo Productions* (2018) 26 Cal.App.5th 11, 25, quoting *Ruiz, supra*, 50 Cal.4th 838, 841; *Eriksson v. Nunnink* (2015) 233 Cal.App.4th 708, 725 [" 'Unlike some jurisdictions wherein wrongful death actions are derivative, [California's wrongful death statute] "creates a *new cause of action* in favor of the heirs as beneficiaries, based upon their own independent pecuniary injury suffered by loss of a relative, and distinct from any the deceased might have maintained had he survived. [Citations.]" ' [Citations]"]; see also *Daniels, supra*, 212 Cal.App.4th at p. 680.)

We conclude that the delegation clause in the arbitration agreement did not require that the arbitrator determine whether plaintiff's independent wrongful death claim was

8

subject to arbitration.  Rather, the threshold issue of whether the arbitration agreement and the delegation clause embedded in it applied to a nonsignatory was for the court.

## DISPOSITION

The order denying defendants' motion to compel arbitration is affirmed.  Plaintiff Gabriel Scott shall recover his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


/s/
RAYE, P. J.

We concur:


/s/
HULL, J.


/s/
DUARTE, J.